UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA NELSKI a/k/a
PATRICIA PELLAND,

   Plaintiff,          Civil Action No.
                  01-CV-71974-DT
vs.
                  HON. BERNARD A. FRIEDMAN
RISK MANAGEMENT
ALTERNATIVES, INC.

   Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

   This case is before the court on remand from the Sixth Circuit Court of Appeals, which vacated this court's orders granting summary judgment for defendant on February 15, 2002 and July 10, 2002. This is a debt collection case, which has been before the court for several previous hearings.

   Plaintiff, Patricia Nelski, a.k.a. Patricia Pelland, alleges that defendant, Risk Management Alternatives, Inc., violated its duties under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(d), and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901. Plaintiff alleges that she was the victim of identity theft, which consequently resulted in an Ameritech account being opened in her name. When Ameritech received no payments on the

account it referred the account to defendant, a debt collection agency. The unpaid debt also appeared on plaintiff's credit report. After plaintiff notified Ameritech of the identity theft, both Ameritech and defendant agreed that plaintiff was not responsible for the account and Ameritech ordered defendant to withdraw the account from collection. However, the debt continued to appear on plaintiffs credit report even after defendant and Ameritech informed her that the problem would be corrected. As a result of the poor credit report, plaintiff claims that she was unable to obtain credit cards and suffered other adverse consequences. Plaintiff alleges that she also suffered emotional damages requiring psychological treatment.

This case has been before this court on numerous motions and has been referred to Magistrate Judge Capel on several occasions. For present purposes, two of these motion hearings are relevant. On February 14, 2002, the parties appeared before the court upon defendant's motion to dismiss count III of plaintiff's complaint, defendant's motion for partial summary judgment, and plaintiff's motion for leave to amend the complaint. Ruling from the bench, the court granted defendant's motion for summary judgment, which should have had the effect of eliminating any claim plaintiff had under the FCRA.[1] Consequently, the court did not rule on plaintiff's motion to amend because the applicable portion of the complaint had just been dismissed. The court also denied defendant's motion to dismiss count III of the complaint in

---

[1] The court clearly intended to dismiss any and all claims under the FCRA. Plaintiff's complaint basically consists of two conclusory allegations separated into three counts. The first count contains the bulk of the complaint and clearly relates to the FCRA and FDCPA. Plaintiff's second count incorporates the averments from the first count and alleges that defendant violated the FCRA on another occasion. The third count applies the same reasoning to state a claim under the MCPA.

order for plaintiff to conduct further discovery.[2] Thus, plaintiff's remaining claims were under the FDCPA and the MCPA only.

The second relevant hearing took place on June 26, 2002, and was before the court upon defendant's motions to dismiss, for summary judgment, and to stay discovery. The court, again ruling from the bench, granted defendant's motion for summary judgment on the remaining portions of the complaint. The court did not rule on defendant's other motions because they were rendered moot by the grant of summary judgment.

Following this hearing, plaintiff appealed the court's July 10, 2002, order granting defendant summary judgment. In a per curiam opinion, the court of appeals vacated this court's orders from February 15, 2002 and July 10, 2002. The court of appeals stated that this court failed to sufficiently set forth the reasons for its rulings from the bench in both hearings and remanded the case for proceedings consistent with its opinion.

**Plaintiff's motion to amend with regard to her FCRA claim**

Plaintiff seeks to amend her complaint in order to assert that defendant was in fact notified by a credit reporting agency ("CRA"). Initially, plaintiff asserted that she personally notified defendant of the problems with her credit report. However, such notice does not give rise to defendant's duties under the FCRA. Instead, defendant's duties arise only after it has been

---

[2]The court intended to limit plaintiff's discovery to one deposition of a representative of Risk Management with the most knowledge of plaintiff's account. Defendant produced this person. However, in her notice of deposition, plaintiff broadly worded the discovery request to cover information that would require multiple depositions. This matter was addressed in a hearing before Magistrate Judge Capel on plaintiff's motion to compel and defendant's motion for a protective order. Judge Capel ordered defendant to produce persons having knowledge of defendant's debt collection practices and procedures and of defendant's procedures relating to the claims that this court had already dismissed. This court granted summary judgment, effectively ending the case, before this discovery could take place.

put on notice by a CRA, such as Experian. This amendment would be necessary for plaintiff's claim to go forward and the fact that defendant was notified by a CRA is not disputed by the parties. On the contrary, the main conflict concerns the remainder of plaintiffs complaint. In order to state an FCRA claim, plaintiff would need to assert facts showing how defendant violated § 1681s-2(b). Plaintiff has not done this.

Initially, plaintiff sought to prove her claim by arguing that defendant failed to comply with the duties outlined in § 1681s-2(b) by failing to notify Experian, a CRA, that her account was fraudulent. However, defendant has shown that it did in fact notify Experian concerning the incorrect information. Plaintiff now argues that defendant failed to notify a different CRA, Trans Union. Plaintiff's argument is based on the fact that a copy of a Trans Union credit report shows that her account is still open for collection by defendant.[3] If defendant did fail to notify Trans Union, plaintiff may have a viable claim under the FCRA.[4]

Plaintiff argues that it would be unjust for the court to refuse her leave to amend.

---

[3]Plaintiff also relies on evidence tending to show that Trans Union did not *receive* notice from defendant regarding plaintiff's account. However, this evidence consists of deposition testimony and an un-signed affidavit from another case and is inadmissible. Defendant points out that even if this evidence could be considered it still does not refute deposition testimony showing that defendant *sent* notice to Trans Union.

[4]Plaintiff also argues that defendant acted negligently by reporting two separate account numbers for plaintiff. This problem originated when defendant merged with another company, Abacus Financial, which also had an account for plaintiff, in 1998. According to deposition testimony, when such a merger occurs, defendant "flips" the accounts. See Scott dep. at 141. In other words, defendant combines the duplicate accounts by changing the old number to the number assigned by defendant. Once the accounts are flipped, defendant then notifies CRAs that the accounts have been combined. See id. at 142. The notification is done by electronic tape, which is subsequently recorded over after the notification occurs. Defendant has presented evidence that a "flip" did in fact occur in this case and was communicated to all CRAs; however, there is no record of this procedure as the tapes have been reused and recorded over.

Plaintiff correctly notes that Fed. R. Civ. Pro. 15(a) requires the court to grant leave to amend when justice so requires. See Fed. R. Civ. Pro. 15(a). See also 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1484 (1990).

However, the proposed amendment would not change plaintiff's underlying claim that defendant acted negligently in performing its duties under § 1681s-2(b). Rather than claiming that defendant failed to conduct a proper investigation and notify Experian, plaintiff would claim that defendant failed to conduct a proper investigation and notify Trans Union. Additionally, plaintiff's amendment would assert that defendant was notified by a CRA, a necessary element to her claim.

Plaintiff's proposed amendment would be futile and is denied on this basis. The futility of amending a complaint is a proper reason for denying leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962); 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1487 (1990) ("If the proposed change ... advances a claim ... that is legally insufficient on its face, the court may deny leave to amend.").

Plaintiff's amended complaint would be legally insufficient and would not withstand a motion to dismiss. In order to state a claim under the FCRA, plaintiff must allege that defendant, as a furnisher of information, was notified by a CRA concerning a dispute over the accurateness of information provided by the defendant to the CRA, thus giving rise to certain duties under the FCRA. After receiving notice, the furnisher of information must (1) conduct an investigation of the disputed information, (2) review all relevant information provided by the CRA, (3) report the results of the investigation to the CRA, and (4) if the investigation reveals that the information was inaccurate, report the results to all other CRAs to which the furnisher

provided such information. See 15 U.S.C. § 1681s-2(b). Plaintiff must then allege that defendant either willfully ignored these duties or negligently performed or failed to perform them. See 15 U.S.C. §§ 1681n, 1681*o*.

Plaintiff's proposed amendment would not state a claim under the FCRA. Plaintiff's *actual* requested amendment is to add an averment that defendant was notified by a CRA, thus giving rise to its duties under § 1681s-2(b). Simply stating that defendant was notified by a CRA, however, would not change the fact that plaintiff has not pled other necessary facts to state a claim under the FCRA. Plaintiff has not alleged that defendant willfully did not conduct or was negligent in conducting an investigation, willfully did not notify or was negligent in notifying the CRA upon completion of the investigation, or willfully did not notify or was negligent in notifying other CRAs upon learning that the information was incorrect. Read with the actual proposed amendment, plaintiff simply alleges that defendant violated the FCRA by violating the FCRA. The court recognized this futility in February 2002, and granted defendant partial summary judgment.

Additionally, leave to amend may be denied if an amendment would lead to undue prejudice to the opposing party. See Foman, 371 U.S. at 182. Prejudice should be determined based on the specific facts in the case and include inquiries "into the hardship on the moving party if leave to amend is denied ... and the injustice resulting to the party opposing the motion should it be granted." 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1487.

The prejudice in this case lies in the fact that defendant would be subjected to additional and unnecessary litigation costs if the amendment were allowed. The parties have

already engaged in a great deal of discovery. Defendant has produced all documents pertaining to this case in its possession. See April 2, 2002, Motion Hearing Transcript at 9. Moreover, plaintiff had the opportunity to depose, at length, defendant's employee with the most knowledge of plaintiff's account. The deponent detailed, line-by-line, all activity on plaintiff's account and testified that defendant notified all CRAs of the incorrect account and, according to defendant's records, the CRAs received the notice and recalled plaintiff's account. See generally, Scott dep. Nevertheless, plaintiff argues that Ms. Scott had no useful knowledge and seeks access to other representatives of defendant with knowledge of defendant's procedures regarding sending notification to CRAs. Plaintiff's position is meritless, as Scott was quite knowledgeable about all relevant issues pertaining to plaintiff's account with defendant. Plaintiff unfairly tries to demonstrate her lack of knowledge by quoting her answers to questions about CRA procedures for receiving notice from defendant. As defendant correctly notes, Scott cannot be expected to have knowledge of how another company functions.

**Defendant's motion for summary judgment**

Defendant is entitled to summary judgment because plaintiff has not met her burden under Fed. R. Civ. Pro. 56(e) to come forward with sufficient evidence to demonstrate a genuine issue of material fact for trial. Defendant acknowledges the fact that it was notified by a CRA, thus giving rise to its duties as a furnisher of information under the FCRA. Based on the deposition testimony of Kristin Scott and the other credible evidence of record, however, it is clear that defendant complied with the applicable provisions of the FCRA.

Defendant received notice of the disputed account. Initially, Ameritech notified defendant that the account existed due to identity theft and that defendant should not collect. See

Scott dep. at 36, 45, 46, 140. After defendant received this notice from Ameritech, defendant notified Experian, Trans Union, and Equifax, all the CRAs concerned with this account. See id. at 57. Defendant's records, as explained by Ms. Scott, demonstrate that defendant instructed the CRAs to delete plaintiff's account from their records. Ms. Scott also indicated that defendant's records would not indicate that a CRA deleted an account unless the CRA informed defendant it took such action. See id. at 53. At this point, defendant had not conducted an investigation concerning the inaccuracies of the account because it had not been notified by a CRA of a dispute; defendant merely followed Ameritech's instructions to delete the account from its records.

When Experian, a CRA, did notify defendant that the account in question had been disputed by plaintiff, see Scott dep. at 33, 139, 140, defendant investigated the account and, upon learning that the account was fraudulent, notified Experian, Trans Union, and Equifax, again instructing them to delete the account. See Scott dep. at 35, 36, 42, 50, 140. These actions are clearly represented in defendant's business records and testified to by Ms. Scott. Moreover, defendant's records, as explained by Ms. Scott, indicate that the CRAs took the appropriate action regarding the disputed account following defendant's second instruction to delete the account. See id. at 42, 50. Defendant conducted an investigation on the relevant account, reported the results to the CRA which alerted it to the dispute, and upon learning that the information was inaccurate, informed all other CRAs to which it had furnished the information. Defendant had not only notified the above CRAs after Ameritech instructed it to delete the account, but again notified them after investigating. Clearly defendant acted as it was required under the FCRA.

Plaintiff has failed to come forward with specific facts showing a genuine issue of material fact for trial. Plaintiff's only evidence tending to support her claim is a copy of her credit report provided by Trans Union, which shows that a disputed account is open for collection. However, the account shown on the Trans Union report is not the account that was subject to defendant's investigation. Therefore, this does not refute defendant's business records or Ms. Scott's testimony showing that defendant sent the appropriate information to Trans Union. It should be noted that the FCRA does not impose an explicit duty on defendant to make sure the CRA receives information. On the contrary, once defendant has followed the steps outlined in § 1681s-2(b), its duties have been fulfilled.

Additionally, plaintiff has included a new argument that defendant's investigation was negligent because it failed to reveal that plaintiff erroneously had two accounts for the same debt as a result of defendant's merger with Abacus Financial in 1998.[5] Plaintiff relies on the Trans Union Credit report from February 2000, which shows that plaintiff's account is still open for collection. The account number in this report is #1967990. However, the disputed account Experian reported to defendant was #550228. See Scott dep. at 42. Apparently the former number represents plaintiff's account with Abacus Financial prior to the merger with defendant. See id. at 80, 81, 140, 141. The latter number represents plaintiff's current account with defendant following the flip described above. See id. at 80, 141; See supra footnote 4. Defendant has produced evidence showing that it did in fact combine the two accounts and assigned the latter number, #550228. See Scott dep. at 80, 81. Furthermore, defendant has produced evidence showing that notice of the flip was sent to all the CRAs. See id. at 85, 88, 142. Moreover, once

---

[5]Plaintiff made this argument for the first time before the court of appeals.

notice was sent via electronic tape, defendants reused the tapes, thus erasing any concrete record that the notice was sent. See id. at 81, 85, 88. As far as defendant was concerned, the Abacus number ceased to exist. See id. at 81. Any negligence that could have occurred during the flip and subsequent notice would not give rise to a private cause of action under the FCRA but would instead need to be initiated by federal or state agencies: this would not be negligence resulting from notice of a dispute but merely inaccurate reporting of credit information. See 15 U.S.C. § 1681s-2d (limiting causes of action regarding the accuracy of information provided to credit reporting agencies to federal and state agencies).

      Assuming that failing to find the duplicate account could be negligence under the FCRA, plaintiff still cannot survive a motion for summary judgment. An investigation under § 1681s-2(b) concerning account #550228 would not have alerted defendant to the fact that CRAs were still reporting the old Abacus account number. Under the FCRA, defendant is only obligated to investigate the information that is reported by a CRA as being in dispute. See 15 U.S.C.A. § 1681s-2(a)(1). In this case, that information would be account #550228. According to deposition testimony, any record that this account had been merged or associated with account #1967990 was erased shortly after the merger. See Scott dep. at 85, 88. Thus any investigation into account #550228 would not have revealed the duplicate account, let alone the fact that CRAs were still including it on plaintiff's credit report. Once plaintiff brought this problem to defendant's attention, it took action to have the old account number removed from plaintiff's credit reports. See id. at 122.

      Plaintiff has not come forward with evidence that would support a claim that defendant's investigation was negligent other than the existence of a duplicate account in another

company's records.[6] This evidence is insufficient in light of defendant's evidence demonstrating that the two accounts were combined and notice was sent to the CRAs.

Defendant is also entitled to summary judgment on plaintiff's claims under the FDCPA and MCPA. The FDCPA protects consumers against overreaching, harassing and abusive behavior on the part of debt collectors. See 15 U.S.C. § 1692c (prohibiting communications with debtor at inappropriate places or times); 15 U.S.C. § 1692d (prohibiting harassment or abuse by threats, obscene language, or other coercive actions); 15 U.S.C. § 1692e (prohibiting false or misleading representations in connection with the collection of a debt); 15 U.S.C. § 1692f (prohibiting use of unfair or unconscionable means to collect debts). The MCPA prohibits similar behavior. See M.C.L. § 339.901.

Plaintiff claims that defendant harassed her by sending a letter indicating that it was trying to collect a debt and by not following through on its statement that it would correct the problems with her credit report. Plaintiff asserts that this behavior is harassment in violation of the FDCPA and MCPA. However, plaintiff's claim suffers a fatal flaw: plaintiff never received this letter and admits that defendant did not harass her in any way. See Nelski dep. at 50, 51, 52. See also Scott Affidavit ¶¶ 4, 8. Accordingly, any claim plaintiff may make that alleges unfair debt collection practices is meritless.

For the reasons stated above,

---

[6]Plaintiff attempts to show that Trans Union never received notices from defendant through a deposition and affidavit from another case. As discussed previously, these items are inadmissible. More importantly, however, these items only refer to account #1967990 and do not indicate that Trans Union did not receive information concerning account #550228.

IT IS ORDERED that plaintiff's motion for leave to amend the complaint is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

                                S/Bernard A.Friedman
                                BERNARD A. FRIEDMAN
                                CHIEF UNITED STATES DISTRICT JUDGE

Dated:  April 21, 2005
        Detroit, Michigan


Copies: Raymond Guzall, III
        Barry A. Seifman